Glenn Katon SBN 281841
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
(510) 463-3350
(510) 463-3349 (fax)

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS CRENSHAW,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GREGORY AHERN; RONALD H. BROACH; DAVID M. RONQUILLO, and DEPUTY DOES 1-10, Jointly and Severally,<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

### I.    NATURE OF THE CASE

1.    This is a civil rights action arising from Defendants' use of excessive force against Plaintiff Curtis Crenshaw while he was detained at the Glenn Dyer jail in Alameda County, and from Defendants' retaliation against Crenshaw for filing a Government Code Claim to address that excessive use of force. Crenshaw brings this action under 42 U.S.C. § 1983 for violation of his civil rights under the United States Constitution, and brings state law claims for violation of state civil rights and tort law.

### II.    JURISDICTION and VENUE

2.    This Court has jurisdiction over Crenshaw's federal claims under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over his state claims under 28 U.S.C. § 1367.

3. A substantial part of the events and/or omissions giving rise to this lawsuit occurred in Alameda County, California, and in particular the Glenn Dyer Detention Facility in Oakland, California. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

4. **Intradistrict Assignment**: Pursuant to Civil L.R. 3-2(d) this case is properly assigned to the Oakland or San Francisco Division of the Court.

### III.   PARTIES

5. Plaintiff CURTIS CRENSHAW is a resident of the State of California.

6. Defendant GREGORY AHERN, the Alameda County Sheriff, is sued in his official capacity.

7. Defendant RONALD H. BROACH was, at all times relevant to this lawsuit, an Alameda County Deputy Sheriff acting within the course and scope of his employment.

8. Defendant DAVID M. RONQUILLO was, at all times relevant to this lawsuit, an Alameda County Deputy Sheriff acting within the course and scope of his employment.

9. Defendant DEPUTY DOES were, at all times relevant to this lawsuit, Alameda County Deputy Sheriffs acting within the course and scope of their employment.

### IV.   FACTS

### Alameda County Jails

10. Defendant Ahern is responsible for the operation of Alameda County's jails. Since he took office in 2007, at least 80 people have died in his custody.

11. Ahern's county jails are rife with unconstitutional conditions, including the endemic use of excessive force by jail deputies. There have been at least 35 deaths at Alameda County jails since 2014.

12. Conditions at the Alameda County jails are a public health crisis. The class action case *Babu v. County of Alameda*, pending in this Court at Case No. 5:18-cv-07677-NC, provides detailed accounts of Cruel and Unusual Use of Isolation, Failure to Provide Due Process to Prisoners, Failure to Provide Adequate Mental Health Care to Prisoners, and Failure to Provide Reasonable Accommodations to Prisoners with Disabilities.

13. One recent newspaper article titled "The Most Dangerous Place in Alameda County," refers to "a barbaric litany of horrors" at Alameda County's Santa Rita Jail. *East Bay Express*, May 7, 2019. KQED radio reports that Alameda County Jail "staff have also been accused of routinely mistreating inmates."

14. Incidents of excessive use of force by Alameda County jail deputies are too numerous to describe here, but examples include:

   a. In October 2017, Deputy Joseph Bailey told six prisoners to "take care of" of another prisoner and make it look like he slipped in the shower. Bailey made it clear that he "wanted to see blood." The prisoners followed Bailey's instruction and severely beat the other prisoner, causing him to be hospitalized.

   b. In September 2016, Deputy Sheriffs Sarah Krause, Justin Linn, Erik McDermott and Stephen Sarcos facilitated an attack on a prisoner in which they arranged for one prisoner to throw cups of fecal and urine matter on another numerous times over the course of three months.

   c. In August 2010, Alameda County jail deputies beat and tasered a man to death as he was suffering alcohol withdrawal. *See M.H. v. County of Alameda*, Case No. 3:11-cv-02868-JST (N.D. Cal.). The Alameda County Sheriff's Department had found that deputies acted appropriately in restraining the detainee, prior to the County paying a $4,050,000 settlement, making it abundantly clear that the Sheriff's Department is not competent to oversee itself.

   d. Women are housed at Santa Rita jail in filthy conditions, denied basic hygiene products, pressured to have abortions, subjected to incessant strip searches, and forced to endure many other types of cruel and inhumane treatment from guards and staff. *See Mohrbacher v. Alameda County Sheriff's Office*, Case No. 3:18-cv-00050-JD (N.D. Cal.).

   e. Although not at a jail, Alameda County Sheriff Deputies' culture of using excessive force was on gruesome display in November 2015, when Deputies

Paul Wieber and Luis Santamaria savagely beat a suspect who had gotten on his knees and put his hands behind his head. They inflicted permanent injuries on the suspect, took photos standing over him with a foot on his chest like he was wild game, and bribed witnesses to try to keep them quiet.

15. When questioned in November 2018 about the brutal treatment of Alameda County prisoners, Defendant Ahern implied that they deserved such treatment, responding: "You mean the people who are in custody for murder, rape, and robbery, and who have lied their entire lives?

## Civil Rights Violations Against Crenshaw

16. While Crenshaw was held in the Glenn Dyer Detention Facility, he was the target of a campaign of harassment by Defendant Broach, who taunted Crenshaw and other inmates by saying they were powerless to stop him as a deputy from doing what he wanted with them. Broach called Crenshaw's cellmate a "bitch" and "my bitch," boasting "you're under my control" and "I can do whatever I want."

17. Broach was known to be a problem guard. He had to be transferred from his previous post at the Santa Rita jail due to the number of complaints received against him. That pattern continued at the Glenn Dyer facility, where Broach was the subject of many grievances.

18. On February 12, 2018, Crenshaw was being held at the Glenn Dyer jail. Broach ordered Crenshaw out of his cell to search it. While Broach was searching the cell, Crenshaw was placed with other prisoners in a multipurpose room where he could see Broach in his cell.

19. Crenshaw's belongings in the cell included several car magazines and various legal papers needed for his court case. Crenshaw also had a cup with freeze-dried coffee in it, which he planned to use to make a cup of coffee. All of these materials were allowed under the rules of the jail.

20. Broach took Crenshaw's car magazines from his bunk, tore them up and threw them on the floor, then poured coffee over the torn-up pages. Broach then took the covers off Crenshaw's bed and dumped them into the coffee mess on the floor. He also threw Crenshaw's legal papers onto the coffee-drenched pile. Finally, he poured water over everything.

21. On the way back to his cell, Crenshaw picked up the cup with the freeze-dried coffee in it. Broach grabbed Crenshaw's wrist and told him he could not have the cup because it was contraband.

22. Crenshaw said, "it isn't contraband," after which Broach began beating him. Crenshaw never threatened or used violence; nevertheless, Broach proceeded to hit Crenshaw in the head and jaw multiple times.

23. Broach continued to beat Crenshaw, even though Crenshaw was not fighting. Soon thereafter, Defendant Ronquillo came into the cell to help Broach. Ronquillo held Crenshaw's arms behind his back while Broach kept beating Crenshaw. Crenshaw went to the ground with his hands behind his back. Ronquillo told Broach he should stop hitting Crenshaw and cuff him instead, but Broach continued to beat and stomp on Crenshaw.

24. Broach and Ronquillo tried to pull Crenshaw under the stairs near Crenshaw's cell, apparently in an attempt to finish beating him out of view of cameras capturing video in the pod.

25. Ronquillo never attempted to intervene to stop Broach from beating Crenshaw even though he had ample opportunity to do so based upon how long he was present for (and participated in) the beating.

26. The beating caused Crenshaw to suffer great pain. His face was bruised, bleeding, and swollen. He also suffered injuries to his arms, ankles, and back. Crenshaw asked for medical treatment for his injuries. Broach took a picture of Crenshaw's face, appearing to think it was funny that he had beaten him.

27. Crenshaw was later taken to the Highland Hospital, where he underwent tests and received treatment for his injuries, which included a concussion. He was later discharged to the medical facility at the Santa Rita jail.

28. Crenshaw could not get out of bed for multiple days due to his pain. He had a black eye, bruises and swelling that lasted approximately one week.

29. Once Crenshaw began to recover, he was punished for the February 12 incident and placed in administrative segregation. Broach went out of his way to come down to the "hole" to stare into the window of Crenshaw's cell in an attempt to further intimidate him.

30. As a direct and proximate result of the Defendants' acts and omissions, Crenshaw sustained injuries and damages, including the following: contusions, swelling, bleeding, headaches, back injury, emotional distress, pain and suffering.

31. Crenshaw was transferred from the Glenn Dyer facility in February 2018.

32. On July 23, 2018, counsel for Crenshaw mailed a Government Code Claim to the Alameda County Board of Supervisors, based upon the abuses described above.

33. In November 2018, Crenshaw was returned to the Glenn Dyer facility and was immediately put into administrative segregation. He was told that he was placed in administrative segregation because jail staff were mad at him for preparing to file a lawsuit against the deputies.

34. Defendant Does chose to put Crenshaw in administrative segregation in retaliation for his Government Code Claim. He remained in administrative segregation for several weeks without any penological purpose. Crenshaw asked for a formal explanation for why he was placed in administrative segregation but did not receive one.

35. Crenshaw timely and properly filed state tort claims with Alameda County pursuant to the California Government Code and this action is timely filed.

## V.   CLAIMS

### COUNT ONE: 42 U.S.C. § 1983
### Violation of the Eighth Amendment to the Constitution of the United States – Excessive Use of Force

36. Broach and Ronquillo used force on Plaintiff that was objectively unreasonable, in violation of the Eighth Amendment to the Constitution of the United States.

37. The beating by Broach and Ronquillo was the moving force behind the serious injuries Crenshaw suffered.

### COUNT TWO: 42 U.S.C. § 1983
### Violation of the First Amendment to the Constitution of the United States – Retaliation

38. Crenshaw's complaints and his filing of a Government Code Claim regarding deputies' excessive use of force were activities protected by the First Amendment to the United States Constitution.

39. Crenshaw's activities described in the preceding paragraph were a substantial or

COMPLAINT                                                                                          Page 6

motivating factor in the Defendant Does' decision to place him in administrative segregation.

**COUNT THREE:  42 U.S.C. § 1983**
**Municipal Liability**

40. Defendant Ahern is liable in his official capacity for developing and maintaining customs, policies, practices and procedures that allowed and directly led to Crenshaw's injuries.

41. In addition or in the alternative, Defendant Ahern is liable in his official capacity for negligently hiring, inadequately training, and inadequately supervising Broach and Ronquillo who injured Crenshaw.

**COUNT FOUR:  BANE ACT**

42. By their acts, omissions, customs, and policies, Broach and Ronquillo acting in concert/conspiracy, as described above, violated Crenshaw's rights under California Civil Code § 52.1, and the following clearly established rights under the United States Constitution and the California Constitution:

   a. The right to be free from excessive and unreasonable force in the course of being detained as secured by the Fourteenth Amendment to the United States Constitution;

   b. The right to be free from unreasonable and excessive force, as secured by the California Constitution, Article 1, § 13; and

   c. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

43. The violations of Civil Code § 52.1 by Broach and Ronquillo caused Crenshaw significant injuries.

**COUNT FIVE:  ASSAULT & BATTERY**

44. Broach and Ronquillo intended to, and did, cause harmful physical contact with Crenshaw.

45. Crenshaw did not consent to the harmful physical contact by Broach and Ronquillo, which was a substantial factor in causing Crenshaw's injuries.

**COUNT SIX:  NEGLIGENCE**

46. In the alternative to intentional acts alleged above, Broach and Ronquillo acted

1 negligently.

2     47.    Broach and the Ronquillo had a duty not to use excessive force against Crenshaw and cause him unnecessary injury while he was in their custody.

    48.    Broach and the Ronquillo breached that duty, causing Crenshaw significant injuries.

## VI.    JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in his favor, to include:

a) Compensatory damages, including but not limited to, pain, suffering, and humiliation, in an amount determined according to proof;

b) Punitive damages as allowed by law;

c) Treble damages as contemplated by California Civil Code § 52.1;

d) Reasonable attorney fees as provided by law;

e) Costs of court;

f) Such further relief in favor of Plaintiff as is just and proper.

Respectfully submitted,

/s/ Glenn Katon
Glenn Katon

ATTORNEY FOR PLAINTIFF